UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DARRYL DAVIS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1497** |
| **ROBERT TANNER, CCE, WARDEN, IVY MORRIS, ARDC SUPERVISOR, RCC** | **SECTION "A" (4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

**I.     Factual and Procedural Background**

    **A.     State Court Proceedings**

The petitioner, Darryl Davis ("Davis"), is a convicted inmate incarcerated in the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana.[2] On July 16, 1997, Davis and a co-defendant, Paula A. Marshall, were charged by Bill of Information in Jefferson Parish with one count of distribution of cocaine.[3] Davis entered a plea of not guilty to the charge on August 25, 1997.[4] The record provided does not reflect the disposition of the charge against Marshall.

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 3.

[3] St. Rec. Vol. 1 of 4, Bill of Information, 7/16/97.

[4] St. Rec. Vol. 1 of 4, Bill of Information, 8/25/97.

After several failures to appear and forfeiture of his bonds,[5] Davis withdrew his former plea and entered a plea of guilty to the distribution charge on March 23, 1998.[6] The Trial Court sentenced Davis to serve five years in prison at hard labor. The Court then suspended the sentence and placed Davis on active probation for three years.

Davis's conviction and sentence became final five (5) days later, on March 30, 1998, because he did not seek reconsideration or move for leave to appeal.[7] La. Code Crim. P. art. 914 (West 2001);[8] *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) ("a conviction becomes final when the time for seeking further direct review in the state court expires.") (quoting *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003)).

As part of Davis's probation, the state trial court imposed special conditions which included *inter alia* payment of a fine in the amount of $750.[9] The Court set a proof of payment hearing for April 24, 1998. Davis, however, failed to appear at the hearing.[10] On May 14, 1998, the Court sentenced him to serve ten (10) days in jail for contempt and reset the proof of payment hearing.[11]

---

[5]*See*, *e.g.*, St. Rec. Vol. 1 of 4, Judgment of Forfeiting Bail Bond, 11/10/97; Minute Entry, 2/12/98; Judgment of Forfeiting Bail Bond, 2/18/98.

[6]St. Rec. Vol. 1 of 4, Minute Entry, 3/23/98; Waiver of Constitutional Rights Plea of Guilty, 3/23/98.

[7]In general, under Louisiana law, a guilty plea waives all non-jurisdictional defects in the proceedings prior to the plea and precludes review of such defects either by appeal or post-conviction relief. *State v. Crosby*, 338 So.2d 584, 588 (La. 1976).

[8]At the time, a criminal defendant could move for leave to appeal within five (5) days of the order or judgment being appealed or of a ruling on a timely filed motion to reconsider a sentence. La. Code Crim. P. art. 914 (amended by La. Acts 2003, No. 949, § 1 to allow 30 days). Petitioner did not move for appeal under Article 914 which rendered the conviction and sentence final at the expiration of that period. *State v. Counterman*, 475 So.2d 336, 338 (La. 1985).

[9]St. Rec. Vol. 1 of 4, Minute Entry, 3/23/98.

[10]St. Rec. Vol. 1 of 4, Minute Entry, 4/24/98.

[11]St. Rec. Vol. 1 of 4, Minute Entry, 5/14/98.

On June 9, 1998, Davis's probation officer filed a Rule to Show Cause seeking to have Davis's probation revoked for his failure to comply with the mandatory and special requirements of his probation.[12] The Court set the rule for hearing on August 5, 1998.[13]

In the meantime, Davis again failed to appear at the rescheduled proof of payment hearing set for June 12, 1998.[14] Davis, after his arrest on the Court's attachment, was present for the revocation hearing on August 5, 1998.[15] The Court at that time amended the conditions of his probation to require him to serve 45 days in jail with credit for time served. The Court also ordered him to complete a drug rehabilitation program and to report to his probation officer on Thursday, August 6, 1998, apparently due to his release on credit for time served.

Five months later, on January 22, 1999, Davis's probation officer filed another Rule to Show Cause seeking revocation of Davis's probation and indicating *inter alia* that Davis had been arrested on another criminal charge on December 10, 1998.[16] Specifically, Davis and a co-defendant, Byron E. Davis, were charged on January 12, 1999, by Bill of Information in Jefferson Parish Criminal Case No. 99-173, with the theft of goods valued between $100 and $500 from a Macy's Department Store.[17] Davis, however, failed to appear for the rule/revocation hearing set for March 1, 1999.[18]

---

[12]St. Rec. Vol. 1 of 4, Rule to Show Cause, 6/9/98.

[13]St. Rec. Vol. 1 of 4, Trial Court Order, 6/25/98.

[14]St. Rec. Vol. 1 of 4, Minute Entry, 6/12/98.

[15]St. Rec. Vol. 1 of 4, Minute Entry, 8/5/98.

[16]St. Rec. Vol. 1 of 4, Rule to Show Cause, 1/22/99.

[17]St. Rec. Vol. 4 of 4, Bill of Information (99-173), 1/12/99.

[18]St. Rec. Vol. 1 of 4, Minute Entry, 3/1/99.

The Court finally held the revocation hearing on June 2, 1999, at which Davis stipulated to the grounds for his revocation, including the new criminal charge.[19] The Court ordered that his probation be revoked and that his original sentence of five (5) years in prison be imposed. The Court gave Davis credit for time served and directed that the sentence run concurrently with any sentence to be imposed in Case No. 99-173 (theft of goods).

The records from Case No. 99-173 provided by the respondent show that, on February 24, 1999, Davis was tried before a jury and unanimously found guilty as charged of theft of goods.[20] The state trial court sentenced him to serve two (2) years in prison with credit for time served, and the State filed a multiple offender bill.[21] After later adjudicating Davis to be a third felony offender,[22] the Court sentenced Davis on February 25, 2000, to serve 15 years in prison with credit for time served.[23] That conviction became final on August 29, 2001, which was 30 days after the Louisiana Fifth Circuit affirmed Davis's conviction and sentence on direct appeal, and Davis sought no further direct review.[24] La. Code Crim. P. art. 914; *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir.

---

[19]St. Rec. Vol. 1 of 4, Minute Entry, 6/2/99.

[20]St. Rec. Vol. 4 of 4, Trial Minutes (99-173), 2/24/99; Trial Transcript (99-173), 2/24/99; Jury Verdict (99-173), 2/24/99.

[21]St. Rec. Vol. 4 of 4, Sentencing Minutes (99-173), 2/4/00; Sentencing Transcript (99-173), p. 4, 2/4/00.

[22]St. Rec. Vol. 4 of 4, Multiple Bill Hearing Minutes (99-173), 2/9/00; Multiple Bill Hearing Transcript (99-173), 2/9/00.

[23]St. Rec. Vol. 4 of 4, Multiple Bill Sentencing Minutes (99-173), 2/25/00; Multiple Bill Sentencing Transcript (incomplete) (99-173), 2/25/00.

[24]*See*, *State v. Davis*, 792 So.2d 126 (La. App. 5th Cir. 2001) (re Case No. 99-173). The Court notes that Davis later pursued post-conviction relief related to the multiple offender sentence imposed in Case No. 99-173. That relief was unrelated to the claim now presented to this Court and would not count as collateral review related to the conviction or sentence in Case No. 97-4766 at issue here.

2008) ("a conviction becomes final when the time for seeking further direct review in the state court expires.") (quoting *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003)).

Almost ten (10) years later, on June 29, 2011, Davis submitted a motion to the state trial court in Case No. 97-4766 (distribution of cocaine) seeking clarification of his sentence.[25] Davis indicated that his five (5) year sentence in that case was being made to run consecutively with the 15 year sentence received in Case No. 99-173 (theft of goods). He asked the Trial Court through Case No. 97-4766 to enter an order to clarify for the computation personnel at RCC that his sentences were to run concurrently per the Court's sentence imposed after the probation revocation on June 2, 1999. The state trial court denied the motion advising Davis that it was not for the courts to calculate his sentence and advised him to pursue administrative remedies through the Louisiana Department of Public Safety and Corrections ("DOC") as allowed under Louisiana law.[26]

Davis sought review of this ruling in the Louisiana Fifth Circuit arguing that the Trial Court did not have to calculate his sentence and instead only needed to clarify its order directing that his sentences were to run concurrently.[27] The Louisiana Fifth Circuit denied his application on August 20, 2011, finding no error in the Trial Court's ruling.[28] Davis did not seek further review.

### B. State Administrative Proceedings

According to Davis's petition, and the exhibits attached thereto, he also sought information and relief through the prison administrative grievance system. On June 22, 2011, Davis wrote a

---

[25] St. Rec. Vol. 1 of 4, Motion for Clarity of Sentence, 7/6/11 (dated 6/29/11).

[26] St. Rec. Vol. 1 of 4, Trial Court Order, 7/21/11.

[27] St. Rec. Vol. 2 of 4, 5th Cir. Writ Application, 11-KH-826, 8/18/11 (dated 8/15/11, postmarked 8/16/11).

[28] St. Rec. Vol. 2 of 4, 5th Cir. Order, 11-KH-826, 8/20/11.

letter to Ivy Morris, the ARDC[29] Supervisor at RCC, indicating that his copy of the Master Prison Rap Sheet dated October 12, 2010, incorrectly indicated that his sentences in Case Nos. 97-4766 and 99-173 were to run consecutively rather than concurrently as ordered by the state trial court at the June 2, 1999, revocation hearing in Case No. 97-4766.[30]  He asked that his release date be corrected.

Ms. Morris replied in writing to Davis's letter on June 22, 2011, advising him that his sentence calculation was correct.[31]  She stated that the 15-year sentence in Case No. 99-173 (imposed February 25, 2000) controlled his prison term computation.  She stated that, because the controlling sentence did not designate that it was to be served concurrent with the older sentence in Case No. 97-4766 (imposed June 2, 1999), state law required that the sentences be served consecutively.

On December 2, 2011, Davis submitted a similar letter to Traci B. Dibendatta, a "Time Comp Expert" at the DOC, requesting that she recalculate his sentence for the same reasons.[32]  Davis did not provide a copy of her response, if any.

On January 25, 2012, Davis filed a complaint through the administrative grievance procedure at RCC requesting that his sentences in Case Nos. 97-4766 and 99-173 be run concurrently.[33]  RCC Warden Robert Tanner responded on February 20, 2012, in the same manner as Ms. Morris,

---

[29]The Adult Reception and Diagnostic Center ("ARDC") is an intake unit within the DOC system.

[30]Rec. Doc. No. 3, pp. 21-22.

[31]Rec. Doc. No. 3, p. 20.

[32]Rec. Doc. No. 3, pp. 18-19.

[33]Rec. Doc. No. 3, pp. 16-17.

referenced above.[34]  In contradiction to what Davis was told by the state trial and appellate court, however, Warden Tanner also instructed him that if he wanted additional clarification he should "file a motion with the Jefferson Parish Clerk of Court to clarify your sentence."[35]

Davis appealed to the DOC Secretary through the second step of the administrative grievance procedure.[36]  In the response dated April 24, 2012, the DOC respondent denied his request noting that "the last sentencing court makes the determination as to how the sentences are to be carried."[37]  The respondent also repeated, "[a]s instructed, you may motion the court for clarification."[38]  Davis did not seek further review within the administrative process.

## II.     Federal Petition

In his federal petition, Davis alleges that his sentence in Case No. 97-4766 should be made to run concurrent with the sentence he received in Case No. 99-173 in accordance with the revocation sentence imposed upon him in Case No. 97-4766 on June 2, 1999.  As relief, he seeks an order from this Court to require the prison officials to recompute the terms of his sentence.

The State filed an answer and memorandum in opposition to the petition arguing that Davis's § 2254 petition was untimely filed, and alternatively, that he has failed to exhaust both state court

---

[34]Rec. Doc. No. 3, p. 13.

[35]*Id.*

[36]*Id.*

[37]Rec. Doc. No. 3, p. 15.

[38]*Id.*

and state administrative remedies related to his claim.[39]  Davis filed a reply to the State's opposition re-urging the factual basis of his claim without addressing either defense raised by the State.[40]

## III.   Consideration of the Petition Under 28 U.S.C. § 2241

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[41] applies to this petition, which is deemed filed in this Court under the applicable mailbox rule on June 7, 2012.[42]  In filing his *pro se* petition, Davis utilized the form reserved for filing petitions for habeas corpus relief under 28 U.S.C. § 2254.  The substance of Davis's petition, however, is clearly a challenge to the duration of his sentence and the calculation thereof as determined by the prison officials.  Contrary to the State's suggestion, Davis does not challenge the underlying judgments by which he is held, only the determination of his release date by prison officials.

A petition for writ of habeas corpus directed to either pretrial matters, *see Dickerson v. Louisiana*, 816 F.2d 220, 224 (5th Cir. 1987), or which "attacks the manner in which a sentence is

---

[39]Rec. Doc. No. 9.

[40]Rec. Doc. No. 10.

[41]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[42]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 376-78 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Davis's petition on March 22, 2013, when he paid the filing fee nine months after denial of pauper status.  Davis dated his signature on the memorandum in support of the petition is dated June 7, 2012.  This is the earliest date on which he could have submitted the pleadings to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

carried out or the prison authorities' determination of its duration," *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000), is to be brought and considered under the general habeas provisions of 28 U.S.C. § 2241. *See also*, *Frees v. Maye*, 441 F. App'x 285, 286 (5th Cir. 2011); *Stewart v. Cain*, 71 F.3d 879, 1995 WL 727244, at *1 (5th Cir. 1995) (Table, Text in Westlaw); *see also*, *Lee v. Wetzel*, 244 F.3d 370, 373 n.3 (5th Cir. 2001); *Tolliver v. Dobre*, 211 F.3d 876, 877 (5th Cir. 2000).

In this case, Davis is not challenging the judgment or judgments by which he is held. He instead is without doubt challenging the interpretation of the sentences imposed and their determination that the sentences are to run consecutively. This is a matter to be addressed under the provisions of § 2241. *Pack*, 218 F.3d at 451; *Frees*, 441 F. App'x at 286.

Thus, the fact the Davis's *pro se* petition is captioned and filed as a § 2254 petition does not prevent the Court from properly considering the petition under standards addressed to § 2241 petitions. This Court also has the jurisdictional authority to consider his petition under § 2241 since Davis was convicted and is housed within this district. *Pack*, 218 F.3d at 451.

## IV.     Statute of Limitations

The State urges that Davis's petition is untimely filed under the AEDPA's limitation provisions as applied to § 2254 petitions. The Court disagrees with the State that the petition is to be considered under § 2254 in light of the foregoing discussion.

As a petition attacking "the manner in which a sentence is carried out or the prison authorities' determination of its duration," Davis's petition will be addressed as a petition pursuant to § 2241. *Pack*, 218 F.3d at 451; *Frees*, 441 F. App'x at 286. The United States Supreme Court has held that "[t]he limitations imposed by § 2244(b) apply only to a 'habeas corpus application

under § 2254[.]'" *Magwood v. Patterson*, 561 U.S. 320 (2010). As such, this Court need not entertain the State's limitations defense.[43]

## V. Exhaustion of State Required Remedies

The State asserts that Davis did not seek review of his claim in the Louisiana Supreme Court, noting his obligation to do so as part of Louisiana's administrative remedy process. Davis did not respond to the State's exhaustion defense in his reply to their opposition memorandum.

Although there is no reference to an exhaustion requirement in the statutory language of 28 U.S.C. § 2241(c), a federal court should abstain from the exercise of its habeas jurisdiction if the issues raised in a petition may be resolved on the merits in the state court or by some other state procedures available to the petitioner. *Dickerson v. Louisiana*, 816 F.2d 220, 225 (5th Cir. 1987); *Edge v. Stalder*, 83 F. App'x 648, 2003 WL 22976091, at *1 (5th Cir. Dec. 16, 2003); *Greer v. St. Tammany Parish Jail*, 693 F. Supp. 502, 508 (E.D. La. 1988); *see also Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 489-92 (1973). The exhaustion doctrine is applied to § 2241(c) as a matter of comity and is based on federalism grounds to protect the state courts' important independent jurisdictional opportunity to address and resolve initially any constitutional issues arising within their jurisdiction and to limit federal interference in the state adjudicatory process. *Dickerson*, 816 F.2d at 225.

Generally, the exhaustion requirement is satisfied only when <u>all</u> grounds urged in a federal petition were previously presented to the state's highest court in a procedurally proper manner. *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). In § 2241 cases, this exhaustion requirement is obviated only if "special circumstances"

---

[43]Even if the limitations defense were to apply here, it would run from Davis's the date the factual basis for his claim was discoverable with due diligence not from finality of his initial conviction as suggested by the State.

10

exist. *Dickerson*, 816 F.2d at 225 (citing *Braden*, 410 U.S. at 489); *Tooten v. Shevin*, 493 F.2d 173, 177 (5th Cir. 1975).

To exhaust his claims in the state courts, Davis must fairly present the same claims and legal theories he urges in this federal court to the state courts through the Louisiana Supreme Court in a procedurally proper manner and must have given the state courts an opportunity to address those claims. Louisiana law requires that an appropriate post-conviction claim must be brought in an application for post-conviction relief filed in the state district court. La. Code Crim. P. arts. 925 and 930.3. The petitioner may then seek supervisory review in the appellate court, La. Code Crim. P. art. 930.6, and discretionary review in the Louisiana Supreme Court, La. S. Ct. Rule X§5.

Davis filed a motion asking the state trial court in Case No. 97-4766 for an order addressed to the prison officials to clarify that his sentences were to be served concurrently. He sought review of the Trial Court's denial in the Louisiana Fifth Circuit. However, he did not seek review of those rulings in the Louisiana Supreme Court. He, therefore, has not exhausted available state court remedies related to the Trial Court's denial of his Motion for Clarity of Sentence addressing the concurrent running of his sentences.

In addition, the record does not reflect, and Davis has not alleged, that he exhausted administrative review of his claim under the state's Corrections Administrative Remedy Procedure ("CARP"), La. Rev. Stat. Ann. § 15:1171 *et seq.*, and the subsequent supervisory review of that procedure by the state courts pursuant to La. Rev. Stat. Ann. § 15:571.15. *See Madison v. Ward*, 825 So.2d 1245 (La. App. 1st Cir. 2002). Under Louisiana's CARP procedures, an inmate must utilize the administrative procedure established by the DOC, or any facility in which he is housed, to resolve any claims related to his confinement, including "time computations, even though urged

as a writ of habeas corpus, or challenges to rules, regulations, policies, or statutes." La. Rev. Stat. Ann. § 15:1171(B). Upon completion of the administrative process within the DOC, an inmate may seek judicial review by filing suit in the appropriate state district court. La. Rev. Stat. Ann. § 15:1177. The provisions of La. Rev. Stat. Ann. § 15:571.15 require that any such suit against the DOC challenging the computation of an inmate's ". . . sentence or sentences, discharge, [or] good time dates . . ." must first be brought in the 19th Judicial District Court in East Baton Rouge Parish.

The attachments to Davis's petition reflect, and the State somewhat concedes, that Davis completed the two-step administrative portion of the CARP process through RCC and the Secretary of the DOC. However, the record does not reflect and the research of the Court does not find that Davis filed an action in the 19th Judicial District to resolved his claim. The records also do not reflect that Davis sought any other review in the Louisiana First Circuit or the Louisiana Supreme Court as required by the CARP remedies.

Davis, therefore, did not complete the administrative review required by state law and has failed to exhaust those remedies. The record discloses no good cause for his failure to properly and fully exhaust his claim, and the Court can find none from its review of the record. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005) (dismissal is appropriate where no good cause is shown for the failure to exhaust). For these reasons, Davis's petition should be dismissed without prejudice for failure to exhaust available state administrative and judicial remedies.

## VI. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Darryl Davis's petition for issuance of a writ of habeas corpus be construed as filed pursuant to 28 U.S.C. § 2241 and **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state required remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[44]

New Orleans, Louisiana, this 30th day of January, 2014.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[44]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.